<table>
<tr><td>

**DISTRICT COURT, GRAND COUNTY, COLORADO**
**14TH JUDICIAL DISTRICT**
307 Moffat Ave,
Hot Sulphur Springs, CO 80451

---

**THOMAS AND JILL STANSFIELD,**

**PLAINTIFFS,**

**v.**

**STATE FARM FIRE AND CASUALTY COMPANY,**

**DEFENDANT.**

</td><td>

DATE FILED: October 20, 2022 4:29 PM
FILING ID: 6191CD8F94A28
CASE NUMBER: 2022CV30082

▲**FOR COURT USE ONLY**▲

</td></tr>
<tr><td>

ATTORNEY FOR PLAINTIFFS:
Jonathan E. Bukowski, Esq.
Colorado Bar No.: 45614
Merlin Law Group, PA
1001 17th Street, Ste. 1150
Denver, CO 80202
Telephone: 720-665-9680
Facsimile: 720-665-9681
E-Mail: jbukowski@merlinlawgroup.com

</td><td>

Case Number:

Div.:          Ctrm:

</td></tr>
</table>

## COMPLAINT AND JURY DEMAND

**COMES NOW** Plaintiffs, Thomas Stansfield and Jill Stansfield, by and through their

undersigned counsel, and hereby submit this Complaint and Jury Demand against Defendant, State

Farm Fire and Casualty Company, as follows:

### PARTIES, JURISDICTION, AND VENUE

1.    Plaintiffs, Thomas Stansfield and Jill Stansfield, are individuals domiciled in

Colorado (hereinafter "Plaintiffs").

2.    Defendant, State Farm Fire and Casualty Company ("Defendant" or "State Farm"),

is a foreign insurance company incorporated in the State of Illinois and authorized to do business

in the State of Colorado.

EXHIBIT A

3.      This Court has subject matter and personal jurisdiction over the parties to this cause of action.

4.      A cause of action exists under Colorado state law for claims regarding the conduct complained of herein.

5.      Jurisdiction is proper as to State Farm pursuant to Colorado Revised Statutes § 13-1-124(1)(a), (b), and (d) because State Farm conducted the business at issue in this action, committed tortious misconduct and contracted to insure property within Grand County, Colorado.

6.      Venue is proper pursuant to Col.R.Civ.P. 98 because the events which constitute the basis of this Complaint and Jury Demand, including, but not limited to, the formation of the insurance policy and location of the property in question, occurred in Grand County, Colorado.

## FACTUAL ALLEGATIONS

7.      At all times material hereto, Plaintiffs were the owners of the residence and property located at 1705 CR 491 Unit 2, Grand Lake, Grand County, Colorado 80447 (the "Property").

8.      At all times material hereto, the Grand County Builders Association estimated the minimum cost of rebuild within the Grand Lake area between $325 to $400 per square foot for residential homes, and between $600 to $800 per square foot for larger luxury homes. *See* **Exhibit 1**.

9.      Plaintiffs purchased a replacement cost value, Colorado Homeowners Policy of insurance from State Farm under Policy Number 06BZV0234 (the "Policy").

10.     The Policy included the following applicable coverages:

a.   Dwelling:                          $554,509.00

EXHIBIT A

|   |   |   |
|---|---|---|
| b. | Dwelling Extension: | $55,451.00 |
| c. | Debris Removal: | $27,725.45 |
| d. | Debris Removal Extension: | $2,772.55 |
| e. | Trees/Plants/Shrubs/Lawn: | $27,725.45 |
| f. | Personal Property: | $415,882.00 |
| g. | Optional ID – Increased Dwelling: | $110,901.80 |
| h. | Optional OL – Building Ordinance: | $55,451.00 |

11.     The Policy provides coverage for additional living expenses incurred to maintain a normal standard of living.

12.     The Policy's insuring agreement provides coverage for sudden and accidental direct physical loss to the Property caused by fire.

13.     Pursuant to its Policy, State Farm agreed to repair, rebuild, and replace damaged Property with materials of like kind and quality.

14.     The Policy provides for replacement cost value benefits at the time in which repairs are to be made, not as of the date of loss. This coverage includes and contemplates any increase in cost that may arise based on a change in market conditions such as access to materials and labor.

15.     On October 21, 2020, during the Policy period, the Property suffered sudden and accidental direct physical loss caused by the East Troublesome Fire.

16.     The East Troublesome Fire destroyed the Property (the "Loss"), including complete burn of the main residence and landscaping.

17.     Plaintiffs were displaced due to the East Troublesome Fire Loss.

18.     Plaintiffs promptly reported their Loss to State Farm and were assigned Claim Number 0612X852B (the "Claim").

19.     On October 30, 2020, State Farm representative Heidi Royalty issued correspondence to Plaintiffs confirming Plaintiffs' participation in the State Farm Premier Service

EXHIBIT A

Program. The letter provided two different independent contractors that Plaintiffs could choose from for debris removal services, including Servpro.

20.     Plaintiffs elected to proceed with Servpro for debris removal services and scheduled a date and time for debris removal services to commence. Servpro failed to attend the initial scheduled appointment.

21.     On the second scheduled date, a Servpro employee notified Plaintiffs that Servpro did not provide debris removal services for total losses.

22.     State Farm assigned the Claim to Bob Black, a claims adjuster, to investigate and estimate the Claim on behalf of State Farm.

23.     State Farm representative Bob Black never inspected the Property.

24.     Plaintiffs located and retained a separate contractor to perform debris removal services.

25.     On December 1, 2020, Plaintiffs provided State Farm an invoice for debris removal.

26.     Because the East Troublesome Fire destroyed the Property, State Farm knew, or should have known, that the Property was a total loss.

27.     Based on State Farm's knowledge that the Property was a total loss, State Farm knew, or should have known, that the Property would need to be rebuilt.

28.     Because the East Troublesome Fire destroyed the landscape surrounding the Property, State Farm knew, or should have known, that the cost to remove all of the destroyed trees, shrubs, and plants would exceed the coverage limitations of the Policy.

EXHIBIT A



29.     Based on the existing construction market conditions in Grand County, State Farm knew, or should have known, that the cost to reconstruct the Property would exceed the coverage limitations of the Policy.

30.     On December 10, 2020, State Farm issued a Coverage A 50% advance payment in the amount of $308,504.50.

31.     On December 10, 2020, State Farm issued a Coverage B 30% advance payment in the amount of $119,503.60.

32.     On December 31, 2021, two months after the Loss, State Farm representative Bob Black contacted Plaintiffs via telephone and advised that he was ready begin preparing the estimate for replacement of the Property.

33.     During the December 31, 2021 call, Bob Black indicated that there was confusion as to the location and nature of the Property. Shortly after ending the call, Bob Black sent correspondence to Plaintiffs via text message stating he was reviewing the wrong file during his discussion with Plaintiffs.

EXHIBIT A

34.     On January 10, 2021, Bob Black contacted Plaintiffs and indicated a box would be sent whereby Plaintiffs could provide State Farm photographs and drawings for the lost home. Bob Black indicated he would start the estimate upon receipt of those documents. Plaintiffs never received the box referenced by Bob Black.

35.     State Farm reassigned the Claim to Troy Kelley, a claims adjuster, to handle the Claim.

36.     On January 19, 2021, Plaintiffs received a voicemail from Troy Kelley indicating that he was the newly assigned adjuster handling the Claim. Troy Kelley advised Plaintiffs that he intended to inspect the Property to obtain measurements and wanted to get the Claim "caught up" that week.

37.     State Farm representative Troy Kelley never inspected the Property.

38.     On January 20, 2021, Plaintiffs contacted Troy Kelley to provide specific information regarding the home lost, including dimensions, materials, detached garage measurements, and interior finishes.

39.     On January 21, 2021, Troy Kelley issued correspondence to Plaintiffs indicating that more time was necessary to complete the evaluation.

40.     On January 29, 2021, Troy Kelley issued correspondence to Plaintiffs via text indicating the State Farm estimate was pending final authority, and payment would be issued within the following week.

41.     Due to State Farm's unreasonable adjustment of the Claim, Plaintiffs were forced to submit a complaint to the Colorado Division of Insurance ("DOI") detailing the delay and

EXHIBIT A

misrepresentations caused by State Farm's failure to effectuate a prompt, fair, and equitable settlements of Plaintiffs' Claim.

42.    On February 10, 2021, Plaintiffs issued correspondence to Troy Kelley requesting an update on the status of the Claim. Troy Kelley responded as follows: "***Your claim is under final review, all losses over $500,000 take a while as there are multiple layers of authority it has to go through, it's not just your claim it's all large loss claims. You'll be hearing from the adjuster within the next few days once the payment has been issued. I am no longer working under State Farm so I will no longer be your point of contact.***"

43.    On February 22, 2021, four months after the Loss, State Farm produced an estimate of the scope and cost to rebuild the main residence totaling $632,375.59 RCV and $554,509.00 ACV ("First State Farm Estimate").

44.    State Farm never inspected the Property prior to issuing the First State Farm Estimate.

45.    The First State Farm Estimate misrepresented that the Property was inspected on November 21, 2021. In reality, State Farm either never inspected the Property, or did so without Plaintiffs' knowledge or consent.

46.    The First State Farm Estimate grossly understated the scope and cost to rebuild the main residence by misrepresenting that the cost to reconstruct the Property would be approximately $158.00 per square foot. In reality, the minimum cost of rebuild within the Grand Lake area between $325 to $400 per square foot for larger residential homes, and between $600 to $800 per square foot for larger luxury homes. *See* **Exhibit 1**.

EXHIBIT A

47.     On February 19, 2021, the Grand County Builders Association estimated the minimum cost of rebuild within the Grand Lake area between $325 to $400 per square foot for larger residential homes, and between $600 to $800 per square foot for larger luxury homes. Consequently, State Farm knew, or should have known, that the First State Farm Estimate did not provide for the reasonable cost to replace the home at, or shortly after, the time it issued the First State Farm Estimate, nor did it contemplate the increase of material and labor prices due to limited availability and higher demand. *See* **Exhibit 1**.

48.     On February 22, 2021, State Farm issued payment in the amount of $331,953.50 under Coverage A Dwelling, Coverage A Dwelling Extension, and Trees, Shrubs, and Landscaping coverage.

49.     State Farm's failure to timely conduct a thorough evaluation of the Claim, as further alleged above, and its failure to timely prepare an estimate of the scope and cost to rebuild the Property, led to the delay of covered benefits in the amount of $331,953.50, as outlined in Paragraphs 43-48, without a reasonable basis.

50.     State Farm's failure to timely conduct a thorough evaluation of the Claim, as further alleged above, and its failure to timely prepare an estimate of the scope and cost to rebuild the Property was inconsistent with property insurance industry standards.

51.     More specifically, Colorado Division of Insurance Regulation 702-5:5-1-14(4)(A)(1)(a) provides that [a]ll insurers authorized to write property and casualty insurance policies in Colorado, shall make a decision on claims and/or pay benefits due under the policy within sixty (60) days after receipt of a valid and complete claim unless there is a reasonable

EXHIBIT A

dispute between the parties concerning such claim, and provided the insured has complied with the terms and conditions of the policy of insurance.

52.     Colorado Division of Insurance Regulation 702-5:5-1-14(4)(A)(1)(b) provides that [i]f an insurer fails to make a decision and/or pay benefits due under the policy within sixty (60) days after a valid and complete claim has been received, and there is not a reasonable dispute between the parties, and the insured has complied with the terms and conditions of the policy of insurance, the Commissioner of Insurance may impose the following penalties to be paid by the insurer to the insured: . . . (2) If the claim is more than $100.00, the penalty shall be 8 percent annual interest on the amount of benefits due, computed from the latest of the time a valid and complete claim is received, the reasonable dispute was resolved, or the insured complied with the terms and conditions of the policy, until the time the benefits due are paid by the insurer.

53.     State Farm failed to make a decision and/or pay benefits due to Plaintiffs under the Policy within sixty (60) days after a valid and complete claim had been received.

54.     State Farm reassigned the Claim to Amy Dumar, an independent adjuster with E. A. Renfroe & Company ("Renfroe"), to handle the Claim.

55.     On February 24, 2021, State Farm issued a letter in response to Plaintiffs' DOI complaint ("State Farm's DOI Response").

56.     State Farm's DOI Response stated as follows: "***The main concern addressed was lack of communication and timing; with a change of adjuster. Upon review of our file we do agree there was a lack of communication and progress by the adjuster and that is why we released him.***"

EXHIBIT A

57.    On February 25, 2021, State Farm issued correspondence to Plaintiffs indicating that the additional Coverage A Dwelling 5% debris removal coverage was issued in the February 22, 2021 payment.

58.    On April 22, 2021, Plaintiffs received correspondence from State Farm indicating that State Farm had failed to issue payment for the owing Coverage A Dwelling 5% debris removal, contrary to the February 22, 2021 letter.

59.    On April 2, 2021, State Farm issued payment under Coverage A Dwelling 5% debris removal in the amount of $27,725.45.

60.    On April 13, 2021, State Farm issued payment in the amount of $5,261.00 under Coverage B for the remining 30% advance not previously paid.

61.    On May 13, 2021, Plaintiffs received correspondence from ALE Solutions indicating that additional living expense coverage would cease on March 16, 2021.

62.    On May 14, 2021, Plaintiffs contacted Amy Dumar requesting an explanation as to why additional living expense coverage was being withheld and explained that the home lost was his primary residence.

63.    On August 5, 2021, Plaintiffs submitted their initial personal property inventory to State Farm.

64.    On August 23, 2021, Plaintiffs issued correspondence to State Farm outlining the delays in the adjustment of the Claim. Plaintiffs demanded State Farm issue penalty interest pursuant to Colorado Division of Insurance Regulation 702-5:5-1-14(4)(A)(1)(b) for its failure to make a decision and/or pay benefits due to Plaintiffs under the Policy within sixty (60) days after a valid and complete claim had been received.

EXHIBIT A

65.     On August 26, 2021, State Farm responded to Plaintiffs demand stating that the Claim was reviewed for possible penalty interest payments; penalty interest was not owed; and that payment was issued prior to the 60 day timeline for dwelling repairs and contents. The basis for State Farm's decision failed to address the February 22, 2021, payments issued 124 days after the date of loss.

66.     On August 27, 2021, Plaintiffs issued correspondence disputing State Farm's position that penalty interest was not owed. Plaintiffs correspondence stated as follows: "***I write this response to you to disagree with your decision, and want your supervisor involved in your response to this letter of mine before I must go to the next level. I have two (2) neighbors with the exact payout delay by State Farm, and both were awarded a penalty and interest.***"

67.     On September 1, 2021, State Farm issued correspondence responding to Plaintiffs' August 27, 2021 letter. State Farm maintained its position that penalty interest was not owed but failed to address the unequal treatment of similarly situated policyholders.

68.     State Farm reassigned the Claim to Daniel Rodriguez, an independent adjuster with Renfroe, to handle the Claim.

69.     On October 28, 2021, State Farm issued correspondence to Plaintiffs requesting additional information regarding Plaintiffs' personal property inventory.

70.     On November 7, 2021, Plaintiffs provided responsive information to State Farm's request regarding Plaintiffs' personal property inventory. Plaintiffs also notified State Farm that the prior adjuster, Amy Dumar, had represented to Plaintiffs that payment was forthcoming under Coverage B despite having none of the same questions posed in the September 1, 2021 correspondence.

EXHIBIT A

71.    Plaintiffs' November 7, 2021 correspondence questioned whether State Farm possessed the correct inventory originally submitted.

72.    On December 1, 2021, State Farm issued correspondence confirming an error had been made adjusting Plaintiffs' personal property inventory, and State Farm's version contained a misalignment.

73.    On December 17, 2021, Plaintiffs submitted to State Farm invoices pertaining to code upgrades required by the county prior to building permits being granted. Additionally, Plaintiffs explained the difficulty in obtaining a contractor willing to commit to the rebuild, and requested an extension of additional living expense coverage until a time the restoration period could be established.

74.    State Farm reassigned the Claim to Dusty Munsinger, an independent adjuster with Renfroe, to handle the Claim.

75.    On February 24, 2022, Plaintiffs issued correspondence to State Farm requesting that it reconsider its position on penalty interest; requesting an update on the status of payment for the invoices submitted on December 17, 2021; and requesting an extension on additional living expense coverage do to the difficulty in obtaining a contractor.

76.    Due to State Farm's failure to adjust the claim, Plaintiffs were forced to retain legal counsel.

77.    On April 23, 2022, Plaintiffs requested State Farm perform a lifestyle interview lieu of submitting the supplemental personal property inventory.

78.    On June 7, 2022, Plaintiffs again requested State Farm extend additional living expense coverage due to the difficulty in obtaining a contractor.

EXHIBIT A

79.     On June 15, 2022, Plaintiffs submitted a signed rebuild contract with Hodapp Custom Homes, Inc. in the amount of $948,223.00. Plaintiffs requested State Farm issue the remaining coverages Option Increased Dwelling and Ordinance or Law.

80.     Upon reasonable suspicion and belief, State Farm management acknowledged in writing to the Colorado Division of Insurance and the insured that while the policy language provides that the Ordinance or Law Coverage and ID coverage is paid as incurred, as a business practice with a total loss, both coverages are paid upon receipt and review of the rebuild contract.

81.     Based upon its investigation, information supplied throughout the Claim by Plaintiffs, and receipt of an executed rebuild contract, State Farm knew, or should have known, that additional coverage benefits for the Property were due and owing on or before June 15, 2022.

82.     On June 26, 2022, Plaintiffs provided State Farm a detailed spreadsheet evidencing the costs associated with rebuild of the Property.

83.     On June 26, 2022, Plaintiffs requested an update on the status of the Claim and again requested State Farm release Increased Dwelling coverage and Ordinance or Law.

84.     On July 19, 2022, Plaintiffs submitted a supplemental personal property inventory in the amount of $319,639.28.

85.     State Farm reassigned the Claim to Clayton Lawson, an independent adjuster with Renfroe, to handle the Claim.

86.     On July 27, 2022, 21 months after the Loss, and 15 months after submitting its initial estimate, State Farm provided Plaintiff with a revised estimate of the scope and cost to rebuild the Property ("Second State Farm Estimate").

EXHIBIT A

87.     The Second State Farm Estimate provided a total scope and cost to rebuild under Coverage A Dwelling in the amount of $712,918.72 RCV.

88.     The Second State Farm Estimate provided an increase in RCV of $80,543.13 under Coverage A Dwelling when compared to the First State Farm Estimate.

89.     The Second State Farm Estimate did not provide a revised ACV.

90.     On July 27, 2022, State Farm issued payment under Option Increased Dwelling, Option Increased Dwelling Extension, Option Increased Dwelling 5% debris removal, and Option Increased Dwelling Extension 5% debris removal in the amount of $128,091.58.

91.     State Farm's failure to properly evaluate the market conditions of Grand County and produce a revised rebuild estimate led to an unreasonable delay in the processing of the Claim and payment of covered insurance benefits to Plaintiffs in the amount of $128,091.58.

92.     On July 27, 2022, State Farm issued payment under Coverage B personal property in the amount of $33,209.64.

93.     On August 2, 2022, Plaintiffs provided State Farm a spreadsheet containing responsive information to State Farm's request for information regarding Plaintiffs' personal property inventory.

94.     To date, despite receiving Plaintiffs' personal property inventory evidencing costs well in excess of issued payments, State Farm has failed or refused to issue full payment for Coverage B personal property.

95.     State Farm's failure to promptly pay under the Policy resulted in a delay of covered benefits to Plaintiffs without a reasonable basis.

EXHIBIT A

96.     Plaintiffs have complied with all conditions precedent to filing these actions and/or State Farm has waived such conditions.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

97.     Plaintiffs reallege and reaffirm Paragraphs 1-96 as if fully set forth herein.

98.     Under Colorado law, a party attempting to recover a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to Plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

99.     Plaintiffs purchased an all-risk Policy requiring State Farm to pay for any and all fortuitous damages resulting from a loss not expressly excluded or otherwise limited by the Policy.

100.    The Policy between Plaintiffs and State Farm is a binding contract.

101.    Plaintiffs paid premiums and otherwise performed all conditions precedent to recovery of benefits under their Policy with State Farm.

102.    The Policy contained a provision that mandated that State Farm pay for accidental direct physical loss to the Property caused by fire.

103.    State Farm refuses to provide the contractually required and covered benefits to Plaintiffs, including Coverage B personal property.

104.    State Farm has delayed and/or denied certain covered damages and continues to delay and/or deny certain coverages as outlined above.

105.    State Farm's failure to honor its obligations under the Policy is a breach of contract.

106.    State Farm's breach of contract has damaged Plaintiffs.

107.    Plaintiffs are entitled to all benefits due and owing under the Policy.

EXHIBIT A

## SECOND CLAIM FOR RELIEF
### (Unreasonable Delay and Denial of Payment of Covered Benefits Pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116)

108.    Plaintiffs reallege and reaffirm paragraphs 1-107 as if fully set forth herein.

109.    Under Colorado Revised Statute § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial is in breach of the duty of good faith and fair dealing.

110.    Under Colorado Revised Statute § 10-3-1115, an insurer's delay or denial is unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

111.    Plaintiffs are first-party claimants within the meaning of Colorado Revised Statute § 10-3-1115.

112.    State Farm is an insurer within the meaning of Colorado Revised Statute § 10-3-1115.

113.    State Farm delayed and denied payment of covered benefits to Plaintiffs as alleged in the preceding paragraphs of the Complaint without a reasonable basis for its actions.

114.    As more fully alleged in the paragraphs above, State Farm failed to conduct a timely and thorough evaluation of the Claim. State Farm's failure to provide an estimate of repairs reflecting the market conditions of Grand County led to an unreasonable delay of covered insurance benefits to Plaintiffs. State Farm knew, or should have known, that dwelling coverage limits were due and owing following its initial inspection of the Property. State Farm's failure to promptly release dwelling coverage limits led to an unreasonable delay of covered insurance benefits to Plaintiffs.

EXHIBIT A

115.     As more fully alleged in the paragraphs above, State Farm's repair estimates did
not provide for the reasonable scope and cost to replace the Property given the market conditions
and increases in labor and materials in Grand County. State Farm's failure to properly evaluate the
market conditions of Grand County led to an unreasonable delay in the processing of the Claim
and payment of covered insurance benefits to Plaintiffs.

116.     As more fully alleged in the paragraphs above, State Farm's failure to timely issue
additional payment for personal property contents until July 27, 2022, resulted in an unreasonable
delay of covered benefits to Plaintiffs without a reasonable basis.

117.     State Farm knew, or should have known, that additional personal property coverage
was due and owing following its initial inspection of the Property and Plaintiffs' submission of
their personal property inventory on August 5, 2021. State Farm's failure to promptly resolve
Plaintiffs Coverage B claim resulted in a delay of covered benefits to Plaintiffs without a
reasonable basis.

118.     In insurance cases, such as this one, "the Unfair Claims Practices Act regulates the
conduct of the insurance industry . . . [and] sets forth standards for when the commissioner of
insurance may find that an insurance company is engaged in an unfair or deceptive trade practice."
*Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 344 (Colo. 2004) (en banc).

119.     Specifically, Section 10-3-1104(1)(h) of the Unfair Claims Practices Act defines
certain acts of unfair claims settlement practice. C.R.S. § 10-3-1104(1)(h). "While the Unfair
Claims Practices Act does not establish a standard of care actionable in tort, it may be used as
valid, but not conclusive, evidence of industry standards." *Allen*, 102 P.3d at 344.

EXHIBIT A

120.    Section 10-3-1104(1)(h)(III) of the Unfair Claims Practices Act provides that it is in an unfair or deceptive act to fail to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies. C.R.S. § 10-3-1104(1)(h)(III). As more fully alleged in the paragraphs above, State Farm's conduct in the adjustment of Plaintiffs' claim runs afoul of Section 10-3-1104(1)(h) of the Unfair Claims Practices Act, including but not limited to its systematic reassignment of the Claim, failure to treat similarly situated policyholders equally, and refusal to reconcile the First State Farm Estimate.

121.    Section 10- 3-1104(1)(h)(IV) further instructs that is in an unfair or deceptive act to refuse to pay claims without conducting a reasonable investigation based on all available information. *Id*., at C.R.S. § 10-3-1104(1)(h)(IV). Further, Section 10-3-1104(1)(h)(VI) provides that is in an unfair or deceptive act to not attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear. C.R.S. § 10-3-1104(1)(h)(VI).

122.    As more fully alleged in the paragraphs above, State Farm's conduct in the adjustment of Plaintiffs' claim runs afoul of Section 10-3-1104(1)(h)(IV), (VI) of the Unfair Claims Practices Act, including but not limited to its failure to promptly resolve Plaintiffs' Coverage A Dwelling claim, and refusal to resolve Plaintiffs' Increased Dwelling claim, runs afoul. Moreover, State Farm should have known that the East Troublesome Fire destroyed the Property resulting in a total loss, and policy limits were due based off market conditions in Grand County. State Farm's failure to inspect the Property led to a delay in covered benefits to Plaintiffs without a reasonable basis.

EXHIBIT A

123.    Section 10-3-1104(1)(h)(II) of the Unfair Claims Practices Act provides that is in an unfair or deceptive act to fail to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies. C.R.S. § 10-3-1104(1)(h)(II). As more fully alleged in the paragraphs above, State Farm confirmed that it failed to acknowledge and act reasonably promptly upon communications with respect to Plaintiffs' claim. *See* Paragraph 57.

124.    Section 10-3-1104(1)(h)(VII) of the Unfair Claims Practices Act provides that is in an unfair or deceptive act to compel an insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured. C.R.S. § 10-3-1104(1)(h)(VII). As more fully alleged in the paragraphs above, State Farm has compelled Plaintiffs to institute litigation to recover amounts due under the insurance Policy.

125.    Similarly, Colorado Division of Insurance Regulation 5-1-14 provides evidence of industry standards, and therefore of the reasonableness of an insurer's conduct. *Goodman v. State Farm Mutual Automobile Insurance Company*, No. 13-cv-1376-WJM-MJW, 2014 U.S. Dist. LEXIS 146866, at *12 (D. Colo. Oct. 15, 2014).

126.    Colorado Division of Insurance Regulation 5-1-14 further states that "[w]hen an investigation is incomplete or is otherwise continued and the insurer has not paid the claim within the time required . . . the insurer shall immediately notify the insured . . . of the reason(s) the claim has not been paid." 3 Colo. Code. Regs. § 702-5:5-1-14, at § 4(B)(3).

127.    Colorado Division of Insurance Regulation 5-1-14 provides that when an insurer cannot immediately complete an investigation, the insurer must send the insured a letter every 30

EXHIBIT A

days setting forth any reasons the investigation cannot be completed. 3 Colo. Code. Regs. § 702-5:5-1-14, at § 4(B)(3).

128.    In addition to the standards set forth within the Unfair Claims Practices Act and Colorado Division of Insurance Regulation 5-1-14, insurance industry standards require an insurer, like State Farm, to conduct a reasonable investigation based on all available information, *see Allen*, 102 P.3d at 344; *see also* 14 Couch on Insurance § 207:25 ("Implicit in the duty to investigate is the requirement that the investigation be adequate and fair."); "providing a reasonable explanation of a denial of a claim," *Allen*, 102 P.3d at 344-45 (affirming bad faith verdict because, among other things, the evidence showed that the insurer "concluded its investigation without exploring [certain] conflicting statements . . . or by talking with [a relevant witness]").

129.    Measured against objective insurance industry standards for claim handling and payment of first party property insurance claims, including the Unfair Claims Practices Act and Colorado Division of Insurance Regulation 5-1-14, State Farm's actions have unreasonably delayed payment of the Loss and damage.

130.    Based on the foregoing, State Farm delayed the authorization of payment of covered insurance benefits without a reasonable basis in violation of C.R.S. § 10–3–1115.

131.    Plaintiffs are therefore entitled to two times the covered benefits that have been delayed and denied to them, attorneys' fees, and costs pursuant to C.R.S. § 10-3-1116, together with interest at the highest rate allowed by law.

### THIRD CLAIM FOR RELIEF
**(Common Law Bad Faith)**

132.    Plaintiffs reallege and reaffirm paragraphs 1-131 as if fully set forth herein.

EXHIBIT A

133.    State Farm owed duties arising from the Policy's implied covenants of good faith and fair dealing, under which State Farm covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiffs fairly and honestly, faithfully perform its duty of representation, and do nothing to impair, interfere with, hinder, or potentially injure Plaintiffs' rights to receive the benefits provided by the Policy.

134.    An insurer breaches its duty of good faith and fair dealing when it engages in unfair claim settlement practices, denying and delaying due payment of available benefits under the Policy.

135.    At all times, Plaintiffs fulfilled their obligations under the Policy and acted in accordance with their duty of good faith and fair dealing.

136.    State Farm breached its covenant of good faith and fair dealing that it owes to Plaintiffs by engaging in a pattern of conduct designed to deprive Plaintiffs of their rights and benefits under the Policy.

137.    As described in more detail above, State Farm and its agents either knowingly, or with reckless disregard to their actions, underestimated the Claim in an effort to drive down the amount of covered benefits payable to Plaintiffs.

138.    As described in more detail above, State Farm strung out the Claim and low-balled the actual cost to repair damage to the Property. State Farm's initial evaluation was grossly insufficient given the market conditions of Grand County. State Farm failed to conduct a timely or objectively reasonable investigation. Consequently, Plaintiffs have been delayed in their ability to timely rebuild their Property, resulting in an increase in the cost of construction and inability to relocate to Grand County.

EXHIBIT A

139.    As demonstrated by the paragraphs above, State Farm has failed to adopt and implement reasonable standards for the prompt investigation of claims arising under its insurance policies. While liability for coverage was reasonably clear, State Farm did not attempt in good faith to effectuate a prompt, fair, and equitable resolution of the Claim.

140.    State Farm knew or should have known that its decision to delay payment of available policy benefits to indemnify the loss and damage would cause Plaintiffs financial distress and pecuniary loss.

141.    State Farm's conduct has resulted in an avoidable harm to Plaintiffs.

142.    It is apparent from State Farm's conduct in the handling of Plaintiffs' Claim that State Farm has adopted a plan or approach to delay, as much as possible, its handling and payment of the Claim.

143.    State Farm has committed such actions willfully and with such frequency as to indicate a general business practice.

144.    Plaintiffs have suffered, and continue to suffer actual damages, due to State Farm's breach of its covenant of good faith and fair dealing.

145.    As a direct and proximate result of State Farm's actions, Plaintiffs have:

(a)    Incurred and will incur in the future increased costs to repair, restore and/or replace the significant property damage;

(b)    Suffered and will continue to suffer damages as a foreseeable and proximate result of the misconduct alleged; and

(c)    Suffered and will continue to suffer other expenses, including attorneys' fees, investigatory fees, and other losses.

## **DEMAND FOR JURY TRIAL**

146.    Plaintiffs demand trial by jury with respect to all claims and issues triable to a jury.

EXHIBIT A

## **REQUEST FOR RELIEF**

147.    Plaintiffs respectfully request that this Court enter judgment in their favor and against State Farm as follows:

(a)    Damages caused by State Farm's breach of contract, including all benefits owed under the insurance contract;

(b)    For statutory damages and penalties pursuant to C.R.S. §§ 10-3-1115, 1116;

(c)    For all costs, expenses, and attorney fees incurred by Plaintiffs as allowed by any statute, court rule, or contract;

(d)    For damages caused by the bad faith breach of insurance contract by State Farm;

(e)    For pre-judgment and post-judgment interest as permitted by statute or court rule; and

(f)    For such other relief as the Court may deem just and proper.

Dated: October 20, 2022                         Respectfully submitted,

*s/ Jonathan Bukowski*
Jonathan E. Bukowski, Esq.
Colorado Bar No.: 45614
Merlin Law Group, PA
1001 17th Street, Ste. 1150
Denver, CO 80202
Telephone: 720-665-9680
Facsimile: 720-665-9681
E-Mail: jbukowski@merlinlawgroup.com

EXHIBIT A



**GRAND COUNTY BUILDERS ASSOCIATION**

www.grandcountybuildersassoc.com

P.O. Box 185, Granby, Colorado 80446

970-364-0177

DATE FILED: October 20, 2022 4:29 PM
FILING ID: 6191CD8F94A28
CASE NUMBER: 2022CV30082

February 19, 2021

Insurance Industry and Affiliates

Re: Grand County residential construction costs

To whom it may concern,

As a result of the tragic East Troublesome Fire that took place in October of 2020 and in response to various inquiries about current, new home construction costs in Grand County, we can offer the following information:

- Numerous factors influence costs:
  - Construction techniques and complexity related to our extreme climate. Grand County is one of only a handful of regions outside of Alaska that are classified as Climate Zone 7 by the US Department of Energy.
  - Property specifics (soils type, topography, vegetation, access to and availability of utilities, etc.)
  - Design details (size, complexity/simplicity, construction style, etc.)
  - Systems options (mechanical & electrical systems, heating system types, site utilities, etc.)
  - Exterior finishes (siding types, roofing types, window packages, decks, patios, landscaping, etc.)
  - Interior finishes (flooring, wall coverings, appliances, plumbing fixtures, light fixtures, etc.)
- Material supply chains have been disrupted by COVID, impacting pricing and availability.
- Various commodity costs, particularly lumber, are at an all-time high.
- All aspects of the industry were already facing unprecedented demands and experiencing extended backlogs.

Realize there is no magic square footage price to use for establishing the cost of a project. It requires detailed quantity takeoffs, accurate estimates and a well-defined scope of work to determine the actual cost. With all of this in mind, we would share an estimated price range for turnkey, ground-up construction based on total building area under roof for:

- Smaller, municipal lots with provided utility services = $325/sf to $375/sf
- Larger, rural lots = $350/sf to $400/sf

Understand the turnkey costs would not include demolition and debris removal associated with homes destroyed in the fire. While it may be possible to construct new homes for slightly less than the ranges noted, costs can definitely far exceed the upper ends of these ranges by an order of magnitude. Costs of $600/sf to $800/sf are being surpassed with the construction of numerous, luxury homes throughout the County. It is also important to note that the costs referenced above reflect actual construction costs as confirmed by multiple, local builders prior to the East Troublesome Fire.

As an organization that represents the professional builders, trade partners and industry associates in Grand County, we understand the challenges that will be facing our community in the months and years ahead as we work through the rebuilding process from the terrible devastation caused by the East Troublesome fire. In a market that is already struggling to keep up with an excessive demand, it is unfortunately likely that construction costs will continue to rise in the foreseeable future.

Respectfully,

**Grand County Builders Association 2021 Board of Directors**

**EXHIBIT 1**

EXHIBIT A